(59 App. Div. 476.)

## BRAZEE v. STEWART.

(Supreme Court, Appellate Division, Fourth Department. March 12, 1901.)

1. PAUPERS—OVERSEER OF POOR—PERSONAL LIABILITY—CONTRACTS.

> Where plaintiff furnished the care, nursing, and maintenance needed by an aged, infirm, and poor person not related to or dependent on him on an understanding with the overseer of the poor that he should be reimbursed therefor by the town, but with no agreement that the overseer would personally pay therefor, plaintiff cannot recover such expenses from the overseer on the refusal of the town to pay.

2. SAME—FAILURE OF DUTY.

> Plaintiff provided care, nursing, and maintenance to a sick pauper on an understanding with the overseer of the poor that the town would pay therefor. Laws 1896, c. 225, § 23, provides that when the person applying for relief as a poor person is sick, so that he cannot be conveniently moved to the county almshouse, the overseer shall apply to the supervisor of the town, who may order such sum to be expended for temporary relief as may be required, but that no greater sum than $10 shall be expended for any one person without the sanction in writing of one of the superintendents of the poor of the county, except where the board of supervisors has made rules as authorized by section 13. The board had made no such rules, and the town paid over $10 on the procurement of the overseer, but refused to pay the balance of the expenses incurred. *Held*, that the overseer was not personally liable for such balance on the ground of his failure to take the necessary steps to charge the town with liability therefor, since his only power and duty was to notify the supervisor, which he did.

Action by Isaac Brazee against Alexander Stewart. Plaintiff moves for a new trial on exceptions taken on a trial before the court and jury, which motion was ordered heard in the first instance by the appellate division. Motion denied.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Sebring & Cheney, for plaintiff.

Francis A. Williams, for defendant.

WILLIAMS, J. The action was brought to recover $700 expenses incurred by the plaintiff for the care, nursing, and maintenance of one Anna Merrick between October 1, 1897, and May 1, 1898. The defendant was overseer of the poor of the town of Hornby, Steuben county, during the year 1897, and until about February 15, 1898, when his term of office expired. The plaintiff, in 1897 and 1898, and for many years prior thereto, was and had been a resident of the town of Hornby, and had in his family as his housekeeper one Miss Hill; and Mrs. Merrick, her mother, also lived in the family. Mrs. Merrick was an old woman, and, having received serious injuries in the summer of 1897, she became, about October 1st, helpless and bedridden, and

continued to grow worse until about May 1, 1898, when she died. While in this helpless condition, she needed care, nursing, and maintenance, was in destitute circumstances, and the plaintiff furnished the care, nursing, and maintenance necessary for her. An effort was made to procure aid for the old woman from the town, and to procure the town to pay for the expense incurred by the plaintiff in caring for her. Some small amount was realized by the plaintiff from the town for this purpose. Nothing further would be paid, or could be recovered from the town, and the plaintiff thereupon brought this action against the defendant personally to recover the balance of the expense incurred by him in furnishing such care, nursing, and maintenance. The grounds upon which it is claimed this action can be maintained, are: (1) That the expense was incurred at defendant's request, and upon his promise to pay therefor. (2) That the expense was incurred in reliance upon defendant's promise to perform his duty as overseer to obtain the approval of the supervisor of the town, and take the necessary steps to charge the town with liability for such care, nursing, and maintenance; and by reason of his neglect of duty and violation of this promise he made himself personally liable for such expense.

The action clearly cannot be maintained upon the first ground stated. The evidence shows that no request or promise to pay was made to bind defendant personally. The plaintiff testified:

"In my dealing with Mr. Stewart, I supposed I was dealing with him as overseer of the poor. My taking care of this old lady was upon the credit of the town. I didn't give Mr. Stewart personally any credit for taking care of this old lady, and did not charge him personally for taking care of her. I didn't suppose I had to do it."

This conclusion, stated by the plaintiff, flows naturally and necessarily from the evidence given in detail. The action can only be maintained, therefore, if at all, upon the second ground stated,—the promise by the overseer to procure the approval of the supervisor, and to take the necessary steps to charge the town with liability, which it is claimed it was his official duty to do; and his failure to keep such promise and perform such duty. The complaint was based solely upon a request and promise to pay by the defendant. There were no allegations therein of promise or failure to perform official duty, and it may well be doubted whether, under such a complaint, this second ground of recovery can be maintained. The answer, however, set up the facts with reference to the defendant's official position and official action, and the evidence was taken without any question being raised as to the form of the complaint, and we very likely should determine the questions now involved upon the merits, regardless of technical questions of pleading. The poor law of the state (Laws 1896, c. 225, § 23) prescribes the duty of the overseer and the supervisor in a case of this kind as follows:

"Sec. 23. Temporary relief to persons who cannot be removed to almshouse. If it shall appear that the person so applying (for relief) requires only temporary relief, or is sick, lame or otherwise disabled so that he cannot be conveniently removed to the county almshouse, * * * the overseer shall apply to the supervisor of the town, who shall examine into the facts and circumstances, and shall in writing order such sum to be expended for the temporary relief of such poor person as the circumstances of the case shall require, which

order shall entitle the overseer to receive any sum he may have paid out, or contracted to pay, within the amount therein specified, from the county treasurer, * * * but no greater sum than $10 shall be expended or paid for the relief of any one poor person or one family, without the sanction, in writing, of one of the superintendents of the poor of the county, which shall be presented to the county treasurer, with the order of the supervisor, except when the board of supervisors has made rules and regulations, as prescribed in section 13, of this chapter."

It was conceded on the trial that no rules or regulations were made by the board of supervisors or by the town board with reference to furnishing temporary or outdoor relief to the poor after the poor law was enacted in 1896, or after section 13 thereof was amended in 1897. It may be well, however, to have in mind the provision of section 13. In the original section the board of supervisors alone could make the rules and regulations. The amendment provided, if the board of supervisors failed to make such rules and regulations, the town board of the town could make them. The section, as amended by chapter 48, Laws 1897, is as follows:

"Supervisors and members of town boards may direct as to temporary or out-door relief to the poor.—The board of supervisors of any county may make such rules and regulations as it may deem proper in regard to the manner of furnishing temporary or out-door relief to the poor in the several towns in said county, and provided the board of supervisors shall have failed to make any such rules and regulations the town board of any town may make such rules and regulations as it may deem proper in regard to furnishing temporary or out-door relief to the poor in their respective towns, by the overseer or overseers of the poor thereof, and also in regard to the amount such overseer or overseers of the poor may expend for the relief of each person or family; and after the board of supervisors of any county, or the town board of any town, shall have made such rules and regulations, it shall not be necessary for the overseers of the poor of the towns in said county, where such rules and regulations were made by the board of supervisors, or if in a town by the said town board, to procure an order from the supervisor of the town, or the sanction of the superintendent of the poor to expend money for the relief of any person or family, unless the board of supervisors of such county or the town board of such town shall so direct."

Clearly, the defendant, as overseer of the poor, under these provisions of law had no power to pay out or contract for more than $10 for the support or care of Mrs. Merrick, unless authorized to do so by the order of the supervisor, and the written sanction of the county superintendent of the poor; and he had no power to compel the supervisor to give him such order, or the superintendent to give him such sanction. It was very likely his duty to apply to the supervisor in her behalf, but he had no further power in the premises. The defendant did apply to the supervisor, and the supervisor, as it was his duty to do, went to plaintiff's residence, where Mrs. Merrick was, and examined into the facts and circumstances. It was the supervisor's duty to order such sum to be expended for her temporary relief as the circumstances of the case required. The overseer had no control whatever over the action of the supervisor; could compel him to do nothing. The supervisor made no order whatever. There was some effort made to remove Mrs. Merrick to the county almshouse, but the removal was opposed by plaintiff and his housekeeper, and was not effected. While the town board made no rules or regulations under the statute, yet they did, upon the procurement of the

overseer, receive from the plaintiff a bill for a part of the expense incurred by him for the care, nursing, and maintenance of Mrs. Merrick, amounting to $85.50, and passed upon such bill, allowing him thereon $21.66, and the plaintiff was paid that amount. He was not satisfied with the amount so allowed him, and refused later, when requested by the overseer, to make or present to the town board any bill for the further expense incurred by him. In view of these facts, we are unable to see how the overseer was responsible for the failure of the supervisor to do his duty, if there was such failure, or how the overseer was guilty of any neglect of duty, or how it was possible for him to take any further steps than he did take to charge the town with liability for the care, nursing, and maintenance of Mrs. Merrick. It seems to us that he did all he could do officially or personally in the premises, and that there is no ground for charging him personally with the expense incurred by plaintiff for such care, nursing, and maintenance. In King v. Butler, 15 Johns. 281, the court said it was the duty of the overseer to furnish the relief; he was under a legal as well as moral obligation so to do; that the duty of procuring from a justice an order was imposed upon the overseer, and was his authority for directing the relief; and, if he neglected to procure the order, it was his own fault or negligence. Suppose the overseer applied to a justice for the order, and could not get it, would he still be liable for the expense incurred for relief, when, without the order, he had no authority to furnish it? Whatever the law may have been under the statute then in force, the overseer, under the poor law now in force, has no duty imposed upon him to get an order from the supervisor. His only duty is to apply to the supervisor. He cannot compel the supervisor to make the order, and he cannot furnish temporary relief beyond $10, unless the supervisor makes the order and the superintendent sanctions the expenditure. How, under such a law, can the overseer be said to neglect his official duty, and be personally liable for the expense incurred for the care, nursing, and support of Mrs. Merrick, because he did not get the order and sanction? The plaintiff calls our attention to many cases holding an officer personally liable for damages resulting from his neglect of duty, but those cases are unimportant here, because the overseer was guilty of no neglect of duty, as we have seen. The court committed no error in granting the motion for a nonsuit. The plaintiff's exceptions should be overruled, and the motion for a new trial denied, and judgment ordered on verdict, with costs.

So ordered. All concur.