tiff, and forming no part of his cause of action. There is no general or specific denial of the facts actually set forth in the complaint.

[1] The first defense, as stated in paragraphs 1 to 6, inclusive, of the answer (though not separately numbered), is insufficient, because, under the law of this case as laid down upon the decision of the motion for judgment on the original answer:

"The indorsement by the defendant of the note constitutes a written contract of warranty that on due presentment the note shall be paid, and that if it be dishonored he will pay the amount thereof to the holder. * * * In any event the defense would have no validity, for the written contract of indorsement cannot be varied by any implied agreement not in writing."

See, also, Bird v. Kay, 40 App. Div. 537, 58 N. Y. Supp. 170.

[2, 3] The second subdivision of the first defense is also insufficient in law, for the reason that, while it undertakes to set up false representations made by plaintiff to induce defendant to purchase the receiver's certificates for which the note in suit was given, there is no allegation that these representations were false to the knowledge of plaintiff when made, and scienter is one of the necessary elements of fraud. Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651.

[4] The second defense set up is insufficient in law, because there is no allegation that there was any valid agreement, supported by consideration, for the extension of the time of payment of the note. National Citizens' Bank v. Toplitz, 178 N. Y. 464, 71 N. E. 1.

[5] The third defense is insufficient in law, because it contains nothing save conclusions of law, without any allegations or denials constituting a defense.

[6, 7] The fourth defense is insufficient in law, because, under the law of the case as heretofore declared, the parol agreement whereby it is claimed the indorsers became liable as guarantors only cannot be proved, and, further, because under Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 118, joint indorsees who indorse are deemed to do so jointly and severally, wherefore an action lies against any one of them individually.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the motion for judgment granted, with $10 costs, but with leave to defendant to serve an amended answer within 20 days upon payment of the costs; entry of judgment in the meantime to be suspended. All concur.

---

(73 Misc. Rep. 566.)

BELLOWS et al. v. BOARD OF SUP'RS OF SENECA COUNTY.

(Supreme Court, Special Term, Seneca County.  October, 1911.)

HEALTH (§ 16*)—REGULATIONS—CARE OF DISEASED PERSONS.

Where a person comes from another state to New York, and before he has gained a residence, while dependent on his daily labor for the support of himself and family, is stricken with a contagious disease and quarantined by the health authorities in pursuance of the provisions of the public health law, and, being unable to work, is supplied with the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

necessaries for the care of himself and family until he recovers on order of the town board of health to charge them to the town, the cost of the necessaries is a proper charge against the town and should be levied, collected, and paid as other town charges.

[Ed. Note.—For other cases, see Health, Cent. Dig. §§ 13, 14; Dec. Dig. § 16.*]

Application by Lester W. Bellows and others for a writ of mandamus to the Board of Supervisors of Seneca County. Denied.

George F. Bodine and J. N. Hammond, for relators.
Macdonald & Macdonald, for respondent.

SAWYER, J.   Thomas T. Larrabee, a resident of the state of Pennsylvania, on or about March 15, 1906, moved into the town of Tyre, Seneca county, this state, with his family, consisting of a wife and six children, ranging in age from 2 to 15 years. In November of the same year he removed with his family to the town of Fayette, and in April, 1907, from there into the town of Waterloo. Mr. Larrabee had no means or property, other than some articles of household furniture, and was dependent upon his daily labor for the support of himself and his family. In the month of February, 1908, he became ill, and after some days and upon the 24th day of February, 1908, sent for the relator, Dr. Lester W. Bellows, who discovered him to be suffering from smallpox. Up to this time, neither he nor his family had ever been public charges; but, when advised of the nature of his illness and the necessity of quarantine, he stated to Dr. Bellows that he would be unable to care for himself and his family during the illness and, at the doctor's suggestion, made a written request that relief be provided until he should recover. The doctor thereupon communicated with the overseer of the poor of the town of Waterloo, and it is claimed by both the overseer and the doctor that they then communicated with Mr. Nelson Duntz, who was the superintendent of the poor of the county of Seneca, and were directed by him in substance to take care of the case until it could be ascertained whether the people were town or county charges; the overseer of the poor having previously given the doctor similar instruction. This is denied by Mr. Duntz; but, whatever the fact may be, the following morning, February 25th, the overseer of the poor of the town of Waterloo and Mr. Duntz, the superintendent of the poor of the county of Seneca, met in the village of Waterloo and, together with the supervisor of the town of Fayette, in which town was embraced a portion of the village of Waterloo, had a conversation upon the subject. They were then informed by said supervisor that neither of them had, under the law, anything to do with the case; that it was solely within the jurisdiction of the board of health of the town of Waterloo. And thereafter nothing was done for Mr. Larrabee or his family by either of them. Upon his diagnosis of the case to be smallpox, Dr. Bellows had notified the health officer of the town of Waterloo, and a quarantine against the house and family was immediately put in force; and during the next day or two the doctor and others seem to have

cared for these unfortunates without specific authority from any one, except the conversations claimed by him to have been had with Mr. Carroll and Mr. Duntz.

Upon the evening following the conversation between the poor authorities and the supervisor of Fayette, the board of health of the town of Waterloo held a meeting for the purpose of taking action in relation to the case, at which, so far as the records show, nothing was done other than to arrange for a quarantine of those whom it was thought had been exposed to the infection. Upon the following day, February 26th, the health board held another meeting, at which a committee was appointed to employ a physician to take charge, as the records say, of the Larrabee case; and "the overseer of the poor, Carroll, was instructed to furnish the necessary supplies for the maintenance of the Larrabee family while in quarantine." Upon February 29th, at another meeting of the board, that committee reported that it had employed "Dr. L. W. Bellows to take charge of the Larrabee case at a compensation *to be fixed by the board* at not less than $10.00 per day for each day that his services were required,". which report was apparently adopted, although a formal resolution to that effect does not appear in the record.

No other action seems to have been taken by any public authority in reference to the care and support of Mr. Larrabee and his family during their illness. Dr. Bellows continued his treatment of them until they were all restored to health; a nurse was furnished to aid them during their illness; necessary supplies were procured to be furnished them by various persons; and, in every way possible, those having immediate control of the situation seem to have labored earnestly and with good judgment, not only for the relief of the distressed family, but for the protection of whosoever might be ultimately required to pay the expense. The nurse was employed by Dr. Bellows, as he states, under the direction of the board of health; and the various articles of necessity furnished by merchants and others were furnished upon written orders, signed by James Carroll as messenger, purporting to have been issued by order of the town board of health of the town of Waterloo; and, in every instance, they contained a direction to *charge the amount to the town of Waterloo*. All the bills incurred in the care of this case were ultimately presented to the board of health of the town of Waterloo for payment, and, as the records of that body show, were laid upon the table. What the reason for this disposition was does not appear; but I assume that it was upon the theory that Mr. Larrabee and his family, not having gained a residence in the town of Waterloo, were therefore county charges, and the bills properly chargeable against the county of Seneca. Acting upon this theory, the claimants' thereafter presented the bills to the board of supervisors of the county of Seneca, by which body they were disallowed upon the ground that "they were not a proper charge against the county." Whereupon relators instituted this proceeding for a writ of peremptory mandamus, requiring the board of supervisors to reconvene and audit their several bills.

Certain preliminary and other objections have been interposed in behalf of the respondents; but, in view of the conclusion I have

reached upon the merits of the controversy, it does not seem necessary that they should be passed upon. The amount of the services and of the supplies, their necessity, and their value seem to be unquestioned; the only dispute being as to by whom payment is to be made. Coming here from the state of Pennsylvania, the Larrabee family had not gained a residence in any town in this state; and, under ordinary circumstances, upon an application for relief to the poor authorities, would have been county charges, and moneys expended for their care paid from the poor funds of the county. The law governing such cases, fixing the powers and duties of the public authorities and regulating the method and extent of relief, then, as now, protected with the utmost precision the interests of both the county and the indigent person.

It will be seen from the statement of relators that neither the town nor the county poor authorities assumed any jurisdiction of this case other than to direct, as the dictates of humanity demanded, that the people be cared for until it could be ascertained by whom the burden must be borne; that upon the following day both those officers abandoned any suspicion which they might otherwise have assumed; that the board of health of the town of Waterloo met the same evening for the purpose of considering the case, and upon the next day assumed full control of the matter. Even if this were not so, an examination of chapter 27 of the General Laws then in force will disclose that none of the things required to render the support of a poor person a county charge were done. The county superintendent neither directly nor indirectly authorized the expenditures made and the liabilities incurred.

It is not shown that the supervisors or the town board had made rules concerning temporary relief of the poor, so that the authorities were governed by section 23 of the poor laws (Laws 1896, c. 225). That section provided that, where one requiring only temporary relief, by reason of illness, could not be conveyed to the almshouse for care, the local overseer of the poor might, by a written order of the supervisor of the town, expend the sum of $10 for such care, and that, if the expenditure of any greater sum was required, it must be *authorized in writing* by the county superintendent of the poor. Neither that nor any other provision of law, compliance with which is prerequisite to the making the case a county charge, was complied with. Under the circumstances, the expenses of the maintenance of this family could not have been lawfully paid by the poor authorities of the county from the funds intrusted to them, nor could such authorities have recovered from the board of supervisors for such expenditure if the same had been actually made. Brazee v. Stewart, 59 App. Div. 476, 69 N. Y. Supp. 231.

Whether power is vested in the board of supervisors to voluntarily pay for necessities furnished a poor person when the authorities directly charged with their care would have been without lawful right to do so, or to reimburse in such a case the poor authorities for a payment by them made, is a question I shall not discuss. It is sufficient to say that the court has no power to command it to be done.

But, if it were otherwise, the writ here demanded cannot be granted.

The bills are sought to·be enforced against the county of Seneca, only upon the theory that Mr. Larrabee was a "poor person" within the meaning of that term used in our law.   This clearly is not so.   While without means and dependent upon his daily earnings for the support of himself and his family, he never had applied, and at this time did not apply, to the poor authorities for help.   Having unfortunately become afflicted with an infectious disease, he with his family were summarily taken charge of by the health authorities, restrained of their liberty, and confined in such a manner that, if he had been well, he could not have provided for himself and his family.   He submitted to the requirements of the law apparently without protest, simply advising those who represented the public of his inability to care for his family during the quarantine, and that it would therefore be necessary for the authorities to do so.   He was quarantined and restrained for the public good under the provisions of the public health law, and entire charge of the case was assumed by the board of health of the town in which he resided, and in my judgment properly so.   It was the duty of that board to guard against the introduction of contagious and infectious disease, to require the isolation of all persons infected or exposed to such disease, and to provide suitable places for the treatment of sick persons who could not otherwise be provided for. General Laws, c. 25, § 24.   All expenses incurred in the performance of that duty *are a charge upon its municipality* and shall be levied, collected, and paid in the same manner as other charges against it.   Public Health Law (Laws 1893, c. 661), § 30.

Exhaustive powers are given to boards of public health because of the necessity which from time to time arises, requiring for the public good prompt and radical action.   No question is made as to whether a person unfortunate enough to come within their jurisdiction is rich or poor, high or low; whether he is a town charge, a county charge, or a state charge.   The health law contemplates only that, when necessity arises, the power vested in boards of public health shall be promptly exercised for the public good.

The board of health of the town of Waterloo exercised the power given it, and exercised it with good judgment and discretion.   It was authorized to do and to furnish everything which was done and provided for Mr. Larrabee and his family, not because Mr. Larrabee was a poor person, but because he was suffering from a disease which might become communicated to others to the harm of the public; and no different treatment would have been accorded him had he resided in the town of Waterloo for 10 years instead of a few months.

All those connected with the case proceeded at the time upon this theory.   Neither the physician nor nurse nor those who furnished the various articles which were provided had any contractual relation with the poor authorities, or with the county of Seneca.   The physician in charge was employed by the board of health; the nurse was employed under the authority of the health board; the messenger who took care of the temporal wants of the family was employed by the health board; and every article of food, fuel, medicine, and raiment furnished was upon an order signed by the authorized messenger of the health board, expressly stating that it was to be furnished upon the credit of that

board. This was properly so, for the entire expenses were those incurred by that health board, not for the support of Mr. Larrabee, but for the protection of the public from infection from the dangerous disease with which he had become infected. They were incurred under the authority only of the health law and are properly to be charged to and paid by the town of Waterloo as directed by section 30 of that law.

The supervisors are sought to be commanded to reconvene and audit certain claims which are not charges against the county of Seneca and were therefore properly disallowed by them. I apprehend that, under the circumstances, whether the bills were originally audited at nothing or disallowed because they were not proper charges against the county makes no difference. Neither the law nor the facts warrant the granting of the writ.

The prayer of the petitioners is denied with one set of taxable costs to be paid by petitioners proportionately, and judgment is ordered accordingly.

Application denied, with costs.